UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bobby Hayward Smith,

        Plaintiff,

v.

Officer Sherry Appledorn, in her
individual and official capacities;
Officer Joshua Rick, in his
individual and official capacities;
Sergeant Gary Nelson, in his
individual and official capacities;
and the City of Minneapolis,

        Defendants.

Civil No. 11-2966 (JNE/SER)
ORDER

      Plaintiff Bobby Hayward Smith brought suit against Defendants Officer Sherry Appledorn, Officer Joshua Rick, Sergeant Gary Nelson, and the City of Minneapolis, alleging constitutional violations under 42 U.S.C. § 1983. In his Complaint, Smith alleged false arrest (Count 1), excessive use of force (Count 2), malicious prosecution (Count 3), failure to intervene (Count 4), and a municipal liability claim (Count 5). Defendants moved for summary judgment on all claims. Subsequently, the parties stipulated to voluntary dismissal of all claims except for excessive use of force, which is alleged only against Officer Appledorn. Based on the stipulation, the Court dismissed all claims except for excessive use of force, and the Court will now proceed to address that claim as it is alleged against the sole remaining Defendant. For the reasons stated below, the Court denies Defendant's motion for summary judgment.

### I.    BACKGROUND[1]

      On the evening of June 28, 2009, Smith and his girlfriend went to a club with two friends, one of whom was Juan Wilborne. The group left the club at 2 a.m., and the two friends left to get

---

[1]    The facts described below are viewed in the light most favorable to Smith.

1

the car, which was parked in a lot approximately one block away from the club. Smith and his girlfriend waited for them outside of the club. While they were waiting, a man grabbed the girlfriend's buttocks, and Smith got into a fight with the man. Several of the man's associates then joined the fray and beat up Smith. Officer Appledorn observed the fight in progress and broke it up with a mace bomb and told Smith to, "Get out of here. Go home." Smith then walked in the direction of the parking lot where the car was parked, helped by his girlfriend because he was "all messed up, bloody, and crying."

When they entered the parking lot, Smith saw his friend Wilborne. Wilborne asked him what happened, and Smith said he had been "jumped." Smith then saw two of the men who had assaulted him, and he pointed them out to Wilborne. Wilborne ran over to the men and started fighting with them. Smith started walking toward the car, at which time Appledorn approached Smith and told him to go home. Smith told her, "I am going home. The car is right there." The car was behind Appledorn. Appledorn then pushed Smith and Smith fell to the ground. He got off the ground, threw his hands up in the air, and said, "What the fuck did you do that for?" When he made that statement, Smith estimates that he was about a foot away from Appledorn, but he did not step toward her. Appledorn pushed Smith again and tased him. After he was tased, Smith was dazed and remembers very little. He remembers being swarmed by police officers, handcuffed, and taken to jail.

A video camera caught what happened to Smith after he was tased. The video shows Smith on the ground, on his side. Appledorn approaches Smith and kicks him in the back with the side of her foot. She then puts her knee on his back. Two officers approach Smith and grab his left arm. Appledorn then punches Smith at least five times in the back and head area. Appledorn tases Smith in the buttocks, and Smith rolls onto his stomach. Appledorn and the

officers handcuff Smith's hands behind his back. Appledorn leans her body over Smith for a few seconds, and then she kneels beside him.

In her description of the incident, Appledorn remembers that a fight erupted and that Smith was in the middle of that fight. She and some other officers broke up the fight. She saw Smith get into an argument with one of the fighters. She told both men to leave the area, and they obeyed. Another large fight broke out about one block away in a parking lot, and Appledorn noticed that Smith was in the middle of that fight. As she approached Smith, Smith walked toward some officers who were taking another man into custody, and Smith yelled at the man. Appledorn approached Smith, told him to leave the area, and pushed him. Smith fell to the ground, but he stood up and said, "Well, fuck you bitch" and "Fuck you nigger." Smith then took a fighting stance, and Appledorn believed he was going to hit her. She deployed her Taser, and Smith fell to the ground on his side. Appledorn told Smith to roll onto his stomach and put his hands behind his back. She kicked him in the back with the side of her foot to get him to roll over. Smith refused to roll over and swore. Appledorn knelt on Smith's shoulder, and two other officers assisted Appledorn. Appledorn punched Smith in the back, shoulder, arm, and head while asking him to put his arms behind him back. Smith resisted and did not comply. Finally, Appledorn applied a drive stun with her Taser to Smith's buttocks, and with the assistance of another officer, handcuffed Smith's hands behind his back. She then leaned over Smith and told him he was under arrest for disorderly conduct.

Smith suffered pain, soreness, and weakness for "over a week" after the incident. Smith was charged with disorderly conduct, but the charge was later dismissed.

## II.  DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

> 42 U.S.C. § 1983 provides in relevant part:
>
> > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Because § 1983 is "not itself a source of substantive rights," a court addressing a claim pursuant to § 1983 must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quotation omitted). Smith alleges that Appledorn violated his right to be free from excessive force.

Appledorn contends that she is entitled to qualified immunity. "Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). "To defeat a claim of qualified immunity, a plaintiff alleging excessive use

4

of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Id.*

### A. Violation of a Constitutional Right

In his Complaint, Smith alleged that Appledorn used excessive force against him "in violation of the Fourth Amendment prohibition against unreasonable seizure." (Compl. ¶ 23.) Although much of the parties' focus has been on the amount of force Appledorn used on Smith during the seizure, the first question must be whether Smith was reasonably subjected to any force.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). But before a police officer can use physical force, the arrest or investigatory stop itself must be justified. *See generally Andrews v. Fuoss*, 417 F.3d 813, 817–18 (8th Cir. 2005) (analyzing the propriety of the seizure and then the merits of the excessive force claim). To justify a seizure of an individual "without violating the Fourth Amendment's proscription against an unreasonable seizure, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* at 817 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). But "seizure alone is not enough for § 1983 liability. The seizure must be unreasonable." *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999). "Whether such a seizure is reasonable 'must be determined on the totality of the circumstances and is to be judged from the perspective of a reasonable officer on the scene without regard to the underlying intent or motivation.'" *Andrews*, 417 F.3d at 817 (quotation omitted). A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v.*

*Mabery*, 686 F.3d 591, 596 (8th Cir. 2012). An officer's physical touching of a person is indicative of a seizure. *Id.*

It is undisputed that Appledorn seized Smith. Viewing the record in the light most favorable to Smith and looking at the totality of the circumstances, at the time of the seizure, Smith was complying with Appledorn's order to go home. During their first encounter, Appledorn told him to go home; he proceeded directly to the parking lot, and was adjacent to his car when Appledorn encountered him again. He told the officer he was going home and identified his car. According to Smith, he was not involved in the second fight, was not behaving violently or aggressively, was not approaching Appledorn in a threatening manner, and was not committing a crime. Accepting this version of the facts, which is not blatantly contradicted by the record, *Scott v. Harris*, 550 U.S. 372, 380 (2007), Appledorn had no specific or articulable basis to seize Smith, and a reasonable officer on the scene would not have done so. If Appledorn's seizure of Smith was unreasonable, any force used in the course of the seizure would also have been unreasonable. *See Graham*, 490 U.S. at 396–97 (officer's use of force violates Fourth Amendment when it is objectively unreasonable given facts and circumstances of particular case). Smith has raised a genuine issue of material fact about whether Appledorn violated a constitutional right.

### B. Right Clearly Established

The next step in the analysis "is to determine whether the right that was violated was 'clearly established' at the time of the defendant's alleged misconduct." *Chambers*, 641 F.3d at 908. "When determining whether an action was a clearly established constitutional violation, [courts] look to the state of the law at the time of the incident." *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012). "The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) (quotation omitted).

Appledorn argues that because Smith's injuries were *de minimis*, she is entitled to qualified immunity under *Chambers*. In *Chambers*, the plaintiff brought a claim of excessive force, and the Eighth Circuit held that although an arrestee had the right to be free from excessive force, it was not clearly established that "an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury." 641 F.3d at 908. But Appledorn's reliance on *Chambers* is misplaced. An excessive force claim is analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 396. As the Supreme Court made clear in *Graham*, the reasonableness inquiry is based on the "facts and circumstances of each case" and "is not capable of precise definition or mechanical application." *Id.* (quotation omitted). The Court rejected an approach to excessive force claims that had become the norm, following a Second Circuit case *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973). That approach considered four factors, one of which was "the extent of injury inflicted." *Johnson*, 481 F.2d at 1033. Although after *Graham* some courts retained a requirement of more than *de minimis* physical injury as a prerequisite to a successful excessive force claim, *see Glenn v. City of Tyler*, 242 F.3d 307, 315 (5th Cir. 2001), the Eighth Circuit was noncommittal on the issue until *Chambers*, when it held that a plaintiff was not required to show more than *de minimis* injury to establish a claim for excessive force, *Chambers*, 641 F.3d at 907. In *Chambers*, the Eighth Circuit reiterated that the dispositive question in an excessive force claim was whether the officer's conduct was reasonable under the circumstances, and it reasoned that the amount of injury could shed light on the quantum of force used. 641 F.3d at 906–907. But the extent of injury is only relevant if the propriety of physical coercion is established. *Chambers* did not present a situation where force

was used in the course of an unreasonable seizure. In such a case, no use of force would have been reasonable. *See generally Hemphill v. Hale*, 677 F.3d 799, 801 (8th Cir. 2012) (explaining that *Chambers* did not address a situation in which officers used force to coerce an individual to consent to a warrantless search of his home, where no use of force would have been reasonable).

Although the Court has concluded that the *de minimis* injury rule in *Chambers*—more specifically, *Chambers*'s observation that the absence of more than *de minimis* injury rule was theretofore not clearly established—does not determine the present motion, the Court will briefly address the argument that Tasers inflict more than *de minimis* injury as a matter of law.[2] Smith correctly observes that some recent district court opinions could be read to apply a bright-line rule when Tasers are used on nonviolent, nonresisting suspected misdemeanants. *See Newton v. Walker*, No. 11-cv-1499, 2012 WL 4856163, at *3 (D. Minn. Oct. 12, 2012). The Court rejects the idea that Tasers—or any other of the modern nonlethal alternatives—should occupy a *sui generis* position in search and seizure law. The problem with tasing a "fully compliant individual, who has committed no crime," *Johnson v. Snedden*, Civil No. 10-4056, 2012 WL 264199, at *4 (D. Minn. Jan. 30, 2012), is not the choice of using a Taser rather than boots; it is the use of force at all.

It has been clearly established for many years that an officer cannot seize a person without having specific and articulable facts to justify the intrusion. *See Terry*, 392 U.S. at 21. A reasonable officer in 2009 would have known that it would be unreasonable to use any amount of force to seize a person in the position—injured, complying, and not fighting—that Smith

---

[2] The Court notes that there is a deficit of testimony about Tasers in this case. Smith seems to make an unsupported assumption that Tasers have the same effect on everyone, regardless of the Taser's setting, the amount of time the Taser is applied to the person, and the type of clothing the person is wearing.

maintains that he was in. Because there are material fact issues that are in dispute, the Court denies Defendant's motion for summary judgment.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [Docket No. 14] is DENIED.

Dated:  February 6, 2013

                                             s/Joan N. Ericksen
                                             JOAN N. ERICKSEN
                                             United States District Judge